the rate of twenty per cent. per annum. By the old statute of 1713, the limitation of these actions, both as regards principal and interest, would have been six years, but by the 13th section of an act passed on the 21st of April, 1841, entitled: 'An act to compel the supervisor of the incorporated district of the Northern Liberties to give security,' &c., it is enacted that the 6th section of the act of limitations of the 26th of March, 1785, should be extended to all and every suit brought, or that may be brought to recover a greater rate of interest than six per cent. as a penalty or forfeiture under any of the provisions of the act of the 12th of April, 1828. * * * A holder of these notes who brings his suit two years after their issue, would therefore recover interest on the sum, to be calculated for the first year at the rate of six per cent. per annum, and at the rate of twenty per cent. from the commencement of the last year, till judgment; but as the declarations in these cases state that the notes were issued one year before the bringing of the suit, which is admitted by the case stated, the plaintiff is entitled to recover the principal sum, together with interest, to be calculated on the same, from the 22d day of December, 1848, till judgment. The one per cent., stated in the notes, cannot be added thereto as the law allows but twenty. The contract as interpreted by the law, is to pay twenty per cent., and no more. The statute limits the recovery of twenty per cent. for one year, but never intended to discharge, after one year, from all liability, those who have issued these notes in determined defiance of the laws of the country. Such an intention cannot be imputed to the legislature, unless it be clearly and plainly expressed.

"The clerk will therefore enter judgment accordingly, as agreed by the case stated."

McCORMICK (BELL v.). See Case No. 1,-255.

## Case No. 8,718.

McCORMICK v. BUCKNER et al.

[2 Wkly. Notes Cas. 480.]

District Court, E. D. Pennsylvania. June 16, 1875.

BILL TO RESTRAIN SHERIFF'S SALE—ACT OF BANKRUPTCY.

This was a bill in equity by Sharpe's assignee to set aside executions at the suit of Buckner, and to restrain the sheriff [Elliott] from making sales, on the ground that Buckner had within the meaning of the bankrupt act [of 1867 (14 Stat. 517)] procured Sharpe's property to be taken on legal process, etc. The executions were issued upon judgments entered by confession on warrants of attorney accompanying bonds, the bonds being given under the following circumstances: Sharpe, the bankrupt, being unable to go on for want of capital, got loans of money from Buckner from time to time, for which he gave the bonds and warrants in question, which, with interest and extra interest of several years, amounted to the sum for which the executions issued. When the first of the loans was made, an agreement was executed between Sharpe and his own son of the one part and Buckner's son of the other part, by which Sharpe agreed to employ the two sons in his factory, paying them each a fixed salary, and as additional compensation giving each a certain percentage of the net profits. This agreement was renewed from year to year, and was in operation when the execution was issued. Buckner's son was bookkeeper, and it was shown that balance sheets had been given from time to time by the son to the father, which showed Sharpe's financial condition.

E. Spencer Miller, for plaintiff, relied on these facts to distinguish the case from those cited by the defendant, arguing that Sharpe had put himself in Buckner's power by owing him all the time more than he was worth, and by giving a bond and warrant by which Buckner might in a moment break him up, and also that in so doing he enabled Buckner, through his son, to inform himself at any time of the condition of the business.

T. Hart, Jr., for defendants, cited: Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473]; Tiffany v. Boatmen's Savings Ins. Co. [18 Wall. (85 U. S.) 375]; In re King [Case No. 7,783]; Sleek v. Turner, 10 N. B. R. 580; Piper v. Baldy [Case No. 11,179]; Clark v. Iselin [21 Wall. (88 U. S.) 360].

THE COURT held that the case of Clark v. Iselin ruled this, and, the testimony relied on not warranting a different decision, bill dismissed with costs.

McCORMICK (HANCE v.). See Case No. 6,-009.

## Case No. 8,719.

McCORMICK v. HOWARD.

[1 MacA. Pat. Cas. 238; 2 App. Com'r Pat. 217.]

Circuit Court, District of Columbia. May 3, 1853.

PATENTS—INTERFERENCE PROCEEDINGS—ADMISSIBILITY OF DEPOSITIONS—PATENTABILITY—UNSUCCESSFUL EXPERIMENTS—LACHES.

[1. The rule excluding depositions taken in another case does not apply where the objecting party was the real party in interest in that case, and was afforded opportunity for cross-examination, and the subject-matter was the same invention.]

[2. A mere principle or idea, until it becomes properly and practically clothed, is not patentable. Nor will a long course of fruitless experiments to reduce the principle to practice be sufficient to deprive a subsequent original inventor, who had perfected his invention without knowledge thereof, of his right to a patent. But, where a prior inventor has been using reasonable diligence to perfect and adapt the invention to practical use, his right will be preserved and protected, although his success may not have been perfect.]